UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

JAMES BECK,

               Plaintiff,

vs.                                           Case No. 2:12-cv-646-FtM-29UAM

DR. JACQUES LAMOUR, FNU NEADS, Nurse
and FNU GANT, Nurse, all acting
under color of state law sued in
their individual personal or
official capacities for liability to
damages and injunctive relief,

               Defendants.
_____

**OPINION AND ORDER**

**I.**

This matter comes before the Court upon review of Defendants' motion to dismiss (Doc. #19, Motion) and attached exhibits consisting of public records from the state and federal courts (Doc. #19-2, Exhs. A-E), filed April 18, 2013.[1] Plaintiff did not file a response to the Motion and the time to do so has expired. See docket; see also Doc. #11 (warning Plaintiff that if a defendant filed a motion to dismiss, he would have twenty-one days to file a response). For the reasons that follow the Court grants Defendants' Motion and dismisses this action.

---

[1] Considering matters of public record do not convert a motion to dismiss to a motion for summary judgment. Universal Express Inc. v. SEC, 177 F. App'x 52, 53 (citing Bryant v. Avado Brands Inc., 187 F.3d 1271, 1278 (11th Cir. 1999); Stahl v. U.S. Dep't of Agric., 327 F.2d 687, 700 (8th Cir. 2003)).

## II.

Plaintiff James Beck, proceeding *pro se*, initiated this action as a resident at the Florida Civil Commitment Center (hereinafter "FCCC") by filing a Civil Rights Complaint (Doc. #1) on December 5, 2012. Plaintiff is involuntarily confined pursuant to the Sexual Violent Predators Act.[2] Plaintiff's motion to proceed as a pauper

---

[2]The Florida legislature enacted the Sexual Violent Predators Act, Fla. Stat. 394.910-.913, by which a person determined to be a sexually violent predator is required to be housed in a secure facility "for control, care, and treatment until such time as the person's mental abnormality or personality disorder has so changed that it is safe for the person to be at large." § 394.917(2). The Act was promulgated for the dual purpose "of providing mental health treatment to sexually violent predators and protecting the public from these individuals." Westerheide v. State, 831 So. 2d 93, 112 (Fla. 2002); Kansas v. Hendricks, 521 U.S. 346 (1997)(holding that the Kansas Sexually Violent Predator Act did not establish criminal proceedings, and involuntary confinement pursuant to the Act was not punitive). Civil commitment under the Act involves several steps. First, the Act requires a mental evaluation of any person who has committed a sexually violent offense and is scheduled for release from prison or involuntary confinement. See generally Fla. Stat. § 394.913. The evaluation is conducted by a multi-disciplinary team of mental health professionals who must determine whether the individual meets the definition of a "sexually violent predator." After the evaluation, the state attorney may file a petition with the circuit court alleging that the individual is a sexually violent predator subject to civil commitment under the Act. Id. If the judge determines that probable cause exists that the individual is a sexually violent predator, then the judge will order the individual to remain in custody. Id. § 394.915. Thereafter, a jury trial, or a bench trial if neither party requests a jury trial, will commence. Id. If the jury finds that the individual is a sexually violent predator by clear and convincing evidence, then the individual will be committed to the custody of the Department of Children and Family Services for "control, care, and treatment until such time as the person's mental abnormality or personality disorder has so changed that it is safe for the person to be at large." Id. § 394.917.

was denied based on the amount of money in his FCCC resident account, and he was directed to pay the filing fee in this action. See Doc. #10.

The Complaint names Jacques Lamour, the medical doctor at the FCCC, and Nurses Neads and Gant, as Defendants. Complaint at 1. Plaintiff alleges that Defendant Lamour violated his rights under the Eighth and Fourteenth Amendments of the United States Constitution and under Article 1, section 2, of the Florida Constitution, by showing deliberate indifference to his serious medical needs, specifically a herniated disc in his neck. Id. at 2-6.

The gravamen of the Complaint is that Plaintiff went approximately five months with "no treatment" for his herniated disc in his neck. Id. at 4. Specifically, Plaintiff claims that on or about March 1, 2010, he began experiencing "pain in the neck." Id. Plaintiff alleges his "subjective complaints about pain in the neck" were not taken seriously. Id. ¶ 4. According to the Complaint, the FCCC medical department saw Plaintiff on August 2, August 7, August 17, August 20, August 23, September 1, September 2, September 6, September 10, September 11; and October 9, 2010. Id. Further, Plaintiff alleges that on an unspecified date, Defendant Lamour failed to provide him with an x-ray. Id. ¶5. Plaintiff acknowledges that he saw a specialist for his neck condition on August 15, 2010. Id. at 4, ¶5. Additionally,

Plaintiff was given an MRI of his neck on September 13, 2010, and an MRI of his lower back on September 15, 2010. Id. at 5, ¶8. Plaintiff underwent surgery for the herniated disc in his neck on September 23, 2010. Id. at 5, ¶9. Although unclear, the Complaint includes additional allegations that Plaintiff went to the medical department on October 6, 2012, for "emergency treatment" for an unspecified condition when Nurse Gant told Plaintiff that "Dr. Lamour is in a conference and gave orders not to call him." Id. at 5, ¶ 11. Plaintiff further alleges on October 7, 2012, he was in "great pain" for an unspecified condition and Nurse Gant told Plaintiff there was "nothing she could do for him." Id. at 6, ¶ 12. As relief, Plaintiff seeks $500,000 in "general damages" and $500,000 in "punitive damages." Id. at 6.

### III.

Defendants move for dismissal pursuant to Fed. R. Civ. P. 12(b)(6). See generally Motion. Defendants point out that Plaintiff has filed two other civil complaints raising similar allegations, which the state and federal courts have dismissed for failure to state a claim. Specifically, in case number 2:11-cv-646-FtM-29DNF, Defendants submit that the Complaint was identical to the instant Complaint, with the exception of the allegations concerning incidents in October of 2012. Id. at 2-3. In 2:11-cv-646, the Court dismissed the Complaint pursuant to 28 U.S.C. § 1915(e)(2)(b)(ii) for failure to state a cruel and unusual

punishment claim under the Eighth Amendment. Id. (citing Exh. B). Defendants argue that Plaintiff was undeterred by this order, so he filed a nearly identical action in the Twelfth Judicial Circuit Court in Desoto County, Florida. Id. (citing Exh. C). The circuit court also dismissed the action for failure to state a claim. Id. at 4 (citing Exh. E). Because the instant Complaint is nearly identical to the complaints Plaintiff filed in those other actions, Defendants argue the instant Complaint should be dismissed with prejudice. Defendants further point out that the Complaint fails to contain any factual allegations against Defendant Nurse Neads. Id.

**IV.**

In deciding a Rule 12(b)(6) motion to dismiss, the Court limits its consideration to well-pleaded factual allegations, documents central to or referenced in the complaint, and matters judicially noticed. La Grasta v. First Union Sec., Inc., 358 F.3d 840, 845 (11th Cir. 2004). Thus, the Court must accept all factual allegations in Plaintiff's Complaint as true and take them in the light most favorable to the plaintiff. Pielage v. McConnell, 516 F.3d 1282, 1284 (11th Cir. 2008). Conclusory allegations, however, are not entitled to a presumption of truth. Ashcroft v. Iqbal, 556 U.S. 662, 681 (2009)(discussing a 12(b)(6) dismissal); Marsh v. Butler County, Ala., 268 F.3d 1014, 1036 n.16 (11th Cir. 2001).

The Court employs the Twombly-Iqbal plausibility standard when reviewing a complaint subject to a motion to dismiss. Randall v. Scott, 610 F.3d 701, 708, n.2 (11th Cir. 2010). A claim is plausible where the plaintiff alleges facts that "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678. The plausibility standard requires that a plaintiff allege sufficient facts "to raise a reasonable expectation that discovery will reveal evidence" that supports the plaintiff's claim. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 556 (2007); Marsh, 268 F.3d at 1036 n.16. Specifically, "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations . . . a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. at 555 (citations omitted). Thus, "the-defendant-unlawfully harmed me accusation" is insufficient. Iqbal, 556 U.S. 662, 677. "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." Id. The "[f]actual allegations must be enough to raise a right to relief above the speculative level." See Twombly, 550 U.S. 544, 545 (abrogating in part Conley v. Gibson, 355 U.S. 41 (1957)). Additionally, there is no longer a heightened pleading requirement. Randall, 610 F.3d at 701. Because Plaintiff is proceeding *pro se*,

his pleadings are held to a less stringent standard than pleadings drafted by an attorney and will be liberally construed. Hughes v. Lott, 350 F.3d 1157, 1160 (11th Cir. 2003) (citing Tannenbaum v. United States, 148 F.3d 1262, 1263 (11th Cir. 1998)).

**V.**

As Defendants correctly note, the instant Complaint is almost identical to the Complaint filed in case number 2:11-cv-646, which was dismissed for failure to state a claim. The instant Complaint, however, contains two vague allegations regarding Plaintiff's visits to the medical department on October 6 and 7, 2012. Nonetheless, the Court finds the instant Complaint is subject to dismissal for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6). Even liberally construing the facts alleged in the Complaint, the Court finds the action fails to state a cruel and unusual punishment claim under the United States Constitution.[3]

**A.  Section 1983**

Title 42 U.S.C. § 1983 imposes liability on anyone who, under color of state law, deprives a person "of any rights, privileges, or immunities secured by the Constitution and laws." To state a claim under 42 U.S.C. § 1983, a plaintiff must allege that (1) defendants deprived him of a right secured under the United States Constitution or federal law, and (2) such deprivation occurred

---

[3]Because the Court finds the federal claims will not proceed, the Court will not exercise pendent jurisdiction over Plaintiff's claim arising under the Florida Constitution.

under color of state law. Arrington v. Cobb County, 139 F.3d 865, 872 (11th Cir. 1998); U.S. Steel, LLC v. Tieco, Inc., 261 F.3d 1275, 1288 (11th Cir. 2001). In addition, a plaintiff must allege and establish an affirmative causal connection between the defendant's conduct and the constitutional deprivation. Marsh v. Butler County, Ala., 268 F.3d 1014, 1059 (11th Cir. 2001); Swint v. City of Wadley, Ala., 51 F.3d 988, 999 (11th Cir. 1995); Tittle v. Jefferson County Comm'n, 10 F.3d 1535, 1541 n.1 (11th Cir. 1994).

The Complaint contains no causal connection between Defendant Nurse Neads and the alleged constitutional violation. See Complaint. In fact, other than being named as a defendant, Nurse Neads' name is not otherwise mentioned in the Complaint. Consequently, any claims against Defendant Neads are dismissed, without prejudice.

**B. Eighth Amendment- Deliberate Indifference to Serious Medical Condition**

"[D]eliberate indifference to [the] serious medical needs of [a] prisoner [ ] constitutes the unnecessary and wanton infliction of pain . . . proscribed by the Eighth Amendment."[4] Farrow v.

---

[4] Under Youngberg v. Romeo, 457 U.S. 307, the Due Process Clause of the Fourteenth Amendment ensures the involuntarily civilly committed a liberty interest in reasonably safe conditions of confinement, freedom from unreasonable bodily restrains, and such minimally adequate training as might be required to ensure safety and freedom from restraint. Id. at 322. The rights of the involuntarily civilly committed are "at least as extensive" as the Eighth Amendment rights of the criminally institutionalized. Dolihite v. Maughon, 74 F.3d 1027, 1041 (11th Cir. 1996).
(continued...)

West, 320 F.3d 1235, 1243 (11th Cir. 2003)(quoting Estelle v. Gamble, 429 U.S. 97, 104 (1976)); Campbell v. Sikes, 169 F.3d 1353 (11th Cir. 1999). In order to state a claim for a violation under the Eighth Amendment, a plaintiff must allege "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." Estelle, 429 U.S. at 106. This showing requires a plaintiff to satisfy an objective and a subjective inquiry. Farrow, 320 F.3d at 1243 (citing Taylor v. Adams, 221 F.3d 1254, 1257 (11th Cir. 2000)).

A plaintiff must first show that he had an "objectively serious medical need." Id. "[A] serious medical need is considered 'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" Farrow v. West, 320 F.3d 1235, 1243 (11th Cir. 2003) (citing Hill v. Dekalb Reg'l Youth Det. Ctr., 40 F.3d 1176, 1187 (11th Cir. 1994)). In either situation, "the medical need must be 'one that, if left unattended, pos[es] a substantial risk of serious harm." Id. (citing Taylor, 221 F.3d at 1258)(alteration in original); see also Andujar v. Rodriquez, 486 F.3d 1199, 1203 (11th Cir. 2007) (finding that a condition involving more than "superficial" wounds,

---

⁴(...continued)
Therefore, the case law that has developed under the Eighth Amendment sets forth the contours of the due process rights of the civilly committed. Id.

affecting ability to walk, and pain that caused crying was objectively, sufficiently serious), cert. denied sub. nom, 128 S. Ct. 385 (2007).

Second, a plaintiff must establish that a defendant acted with "deliberate indifference" by showing: (1) subjective knowledge of a risk of serious harm (i.e., both awareness of facts from which the inference could be drawn that a substantial risk of serious harm exists and the actual drawing of the inference); (2) disregard of that risk; and (3) conduct that is more than gross negligence. Bozeman v. Orum, 422 F.3d 1265, 1272 (11th Cir. 2005). Inadvertence or mere negligence in failing to provide adequate medical care does not rise to a constitutional violation. Farrow, 320 F.3d at 1243. Rather, "medical treatment violates the Eighth Amendment only when it is 'so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness.'" Harris v. Thigpen, 941 F.2d 1495, 1505 (11th Cir. 1991) (quoting Rogers v. Evans, 792 F.2d 1052, 1058 (11th Cir. 1986)).

The Supreme Court has stated that decisions such as whether an x-ray, additional diagnostic techniques, or other forms of treatment are indicated are "[c]lassic example[s] of matters for medical judgment." Estelle, 429 U.S. at 107. The course of treatment chosen by a medical official would appear to be such "a classic example of a matter for medical judgement." Id. A

complete denial of readily available treatment for a serious medical condition obviously constitutes deliberate indifference. Harris v. Coweta County, 21 F.3d 388, 393 (11th Cir. 1994). However, no constitutional violation exists where an inmate and a prison medical official merely disagree as to the proper course of medical treatment. Harris, 941 F.2d at 1505.

Even where medical care is ultimately provided, a prison official may nonetheless act with deliberate indifference by delaying the treatment of serious medical needs, even for a period of hours, though the reason for the delay and the nature of the medical need is relevant in determining what type of delay is constitutionally intolerable. See id. at 393-94; Brown v. Hughes, 894 F.2d 1533, 1537-39 (11th Cir. 1990). Plaintiff seeking to show that a delay in medical treatment amounted to deliberate indifference "must place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment to succeed." Hill v. Dekalb Reg'l Youth Pet. Ctr., 40 F.3d 1176, 1188 (11th Cir. 1994), abrogated in part on other grounds, Hope v. Pelzer, 536 U.S. 730, 739 n.9 (2002)); see also Farrow v. West, 320 F.3d 1235, 1244 n.12 (11th Cir. 2003) ("In Hope v. Pelzer, 536 U.S. 730 (2002) . . . the Supreme Court criticized part of the qualified immunity analysis in Hill, but not Hill's analysis of what constitutes a serious medical need of prisoners.").

The Court accepts as true all of Plaintiff's allegations in the Complaint. Plaintiff claims he began experiencing pain from a herniated disk in his neck in March 2010. The Court assumes <u>arguendo</u> that a herniated disk in the neck constitutes a serious medical need. However, beyond Plaintiff's conclusory allegations that Defendant Lamour was deliberately indifferent to Plaintiff's serious medical need, the Complaint does not contain any facts supporting a finding that Lamour possessed the requisite knowledge, or acted with the requisite culpability.

In fact, the Complaint alleges that only six months from the date Plaintiff initially complained of experiencing pain in his neck, Plaintiff underwent surgery for a herniated disk in his neck. The medical department at the FCCC saw Plaintiff weekly during the months of August and September. Plaintiff acknowledges that he was transported and seen by a medical specialist in early September and given two MRI's in mid-September, before he underwent surgery. To the extent Plaintiff attempts to attribute liability on Defendant Lamour based on the five-month delay from his initial complaints of pain to the date he saw a "specialist," Plaintiff has not alleged any detrimental effect of the delay in medical treatment. Consequently, Plaintiff has not alleged any facts indicating that Defendant Lamour was aware of a substantial risk of serious harm to Plaintiff and that Lamour actually drew that inference. Consequently, the Complaint fails to state a claim as to Lamour.

This is the second opportunity Plaintiff had to file a Complaint setting forth a deliberate indifference claim against Lamour stemming from the treatment for the disc in his neck. The Court dismissed the Complaint the first time for failure to state a claim and pointed out the deficiencies in the Complaint. See Case No. 2:11-cv-646. Instead of correcting those deficiencies, Plaintiff filed a nearly identical Complaint against Lamour. Plaintiff then chose not to respond to Defendants' instant Motion and did not move to file an amended complaint. Consequently, the Court will dismiss the claims against Lamour with prejudice. Bryant v. Dupree, 252 F.3d 1161, 1164 (11th Cir. 2001)(supporting dismissal, with prejudice, after a plaintiff has had an opportunity to correct pleading deficiencies).

Likewise, with regard to Nurse Gant, the Complaint contains only the vague factual allegation that on October 6 and October 7, 2012, Plaintiff "went in for emergency treatment" and Nurse Gant basically told Plaintiff that she could not call Dr. Lamour and/or there was nothing she could do. See Complaint at 5-6. It is unclear how Plaintiff's visit to the medical department in October 2012 is in any way related to his 2010 neck issue, particularly considering he underwent surgery for his neck in September 2010. Therefore, any claims against Defendant Gant are dismissed, without prejudice.

To the extent Plaintiff names the Defendants in their official capacities, there are no facts alleging that a custom or policy was the "moving force" behind any of the medical defendants' failure to treat his serious medical need. Monell v. Dep't of Soc. Servs., 436 U.S. 658, 694 (1978). Nor does Plaintiff identify any particular policy that resulted in the failure to treat his medical needs, or that the medical department had a custom or practice of delaying treatment for FCCC residents. Grech v. Clayton County, Ga., 335 F.3d 1326, 1320-30 (11th Cir. 2003); McDowell v. Brown, 392 F.2d 1283, 1290 (11th Cir. 2004)(citations omitted). Therefore, any official capacity claims against Defendants are also dismissed, without prejudice.

ACCORDINGLY, it is hereby

**ORDERED**:

1. Defendants' motion to dismiss (Doc. #19) is **GRANTED** for the reasons set forth herein. Defendant Lamour is **DISMISSED with prejudice**. Defendants Gant and Neads, and all official capacity claims are **DISMISSED without prejudice**.

2. The Clerk of Court shall terminate any pending motions, enter judgment accordingly, and close this case.

**DONE AND ORDERED** at Fort Myers, Florida, on this ___21st___ day of October, 2013.

*/s/ John E. Steele*
JOHN E. STEELE
United States District Judge

SA: alj
Copies: All Parties of Record